**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Jeffrey H. Wolf, SBN 011361
Aaron C. Schepler, SBN 019985
Kami M. Hoskins, SBN 026271
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denny's, Inc., a California corporation; DFO, LLC, a Delaware limited liability company, | No. 2:09-cv-00741-SRB |
| Plaintiffs, | **MOTION FOR SUMMARY JUDGMENT RE: ENFORCEMENT OF TERMINATION AND DEFENDANTS' COUNTERCLAIM AND FOR A PERMANENT INJUNCTION** |
| v. | |
| Kennedy Restaurants, L.L.C., an Arizona limited liability company; Sandra D. Kennedy and John Doe Kennedy, husband and wife; M. C. Burton, Jr., and Jane Doe Burton, husband and wife, | |
| Defendants. | |
| Kennedy Restaurants, L.L.C., an Arizona limited liability company; Sandra D. Kennedy and M. C. Burton, Jr., | |
| Counterclaimants, | |
| v. | |
| Denny's, Inc., a California corporation; DFO, LLC, a Delaware limited liability company, | |
| Counterdefendants. | |

PHX 329,141,050v1

## I. INTRODUCTION

In March 2009, Denny's terminated the parties' franchise agreement based on Defendants' repeated failure to pay their franchise fees in a timely manner. Denny's then filed this action, seeking a preliminary injunction to prevent Defendants from continuing to use Denny's name and trademarks. Following an evidentiary hearing on September 3, 2009, the Court denied Denny's application for injunctive relief. In its eight-page ruling [Doc. #63], the Court "assume[d] for purposes of this Order that Plaintiffs are likely to succeed on the merits," but denied the motion on other grounds. *See* Order at p. 6. The Court's ruling allowed Defendants to continue operating their Denny's® restaurant until the merits of the case have been decided.

Denny's now asks the Court to decide the merits, and enforce Denny's termination of the franchise. The parties' franchise agreement expressly permits Denny's to terminate if Defendants breached the agreement four or more times in any 12-month period. As the undisputed evidence shows, Kennedy Restaurants breached the agreement by paying their rent and franchise fees late on *15 separate occasions* between August 2008 and January 2009, a period of only six months. As a matter of law, the termination was proper in light of those 15 late payments.

Since the denial of Denny's preliminary-injunction motion, Kennedy Restaurants has stopped paying rent and royalties altogether. For the past 12 weeks, Kennedy Restaurants has not paid *a single penny in rent or royalties*. It has failed even to *report* its sales for the past four weeks, which also constitutes a breach of the parties' agreements. In total, Kennedy Restaurants now owes Denny's more than $39,000 in past-due royalties and rent. Clearly, in denying Denny's injunction motion, the Court did not intend to allow Defendants to continue receiving the benefits of the franchise relationship without paying for it. Yet, that is exactly what they are trying to do.

PHX 329,141,050v1

In any event, because it is undisputed that Kennedy Restaurants' royalty and rent payments were late – and continue to be late – and because Denny's is contractually entitled to terminate the parties' agreements based on the late payments or the total failure to pay, the Court should grant summary judgment on Counts Four and Five of Denny's Complaint. In connection with that ruling, the Court should also: (1) issue a permanent injunction prohibiting Defendants from using the Denny's® name and trademarks; and (2) issue an order directing Defendants to immediately surrender the leased premises.

The Court should also grant summary judgment in favor of Denny's on Defendants' Counterclaim. The Counterclaim is based on two unfounded factual premises. First, Defendants allege that Denny's breached the parties' agreements by seeking to terminate the agreements in March 2009. Because Denny's was legally entitled to terminate the parties' agreements, it is entitled to summary judgment on that portion of Defendants' Counterclaim. Second, Defendants contend that Denny's has "overcharged" them for rent. This claim is likewise unfounded. Denny's charged the rent that Defendants agreed to pay in the sublease and a subsequent amendment, and nothing more. Accordingly, Denny's is also entitled to judgment on Defendants' rent-overcharge claim.

## II.   FACTUAL BACKGROUND

### A.   The Franchise Agreement

Denny's operates a nationwide chain of restaurants, most of which are operated by franchisees. *See* Statement of Facts of Denny's Inc. and DFO, LLC, in Support of Their Motion for Partial Summary Judgment ("SOF"), ¶¶ 1-7. On October 24, 1995, Kennedy Restaurants entered into a "DFO, Inc. Franchise Agreement" (hereinafter, "Franchise Agreement") with DFO, Inc., the predecessor-in-interest to DFO, LLC. SOF, ¶ 8. Under the Franchise Agreement, DFO granted Kennedy Restaurants the right to operate a Denny's® restaurant located at 4303 West Glendale in Glendale, Arizona (the

"Restaurant"). SOF, ¶ 9. A true and correct copy of the Franchise Agreement is attached as Exhibit 1 to Plaintiffs' Complaint.

The Franchise Agreement required Kennedy Restaurants to pay DFO "[f]or the use of the Denny's Marks and the availability of Company supplied supervisory, training and other professional personnel, a weekly royalty fee in the sum of four percent (4%) of [the Restaurant's] weekly gross sales" (hereinafter "Royalty Fees"). SOF, ¶ 10; Franchise Agreement, § 6.1(b). The Franchise Agreement also required Kennedy Restaurants to pay DFO "[a] fee for advertising, public relations and promotion and for the creation and development of public relations and promotional campaigns . . . in the amount of two percent (2%) of [the Restaurant's] weekly gross sales" (hereinafter "Ad Fees"). SOF, ¶ 11; Franchise Agreement, § 6.1(c).

Under the terms of the Franchise Agreement, the operating, accounting, and billing period ends at 3:00 p.m. on Wednesday of each week. SOF, ¶ 12. Kennedy Restaurants is required to submit payment for Royalties and Ad Fees for that week no later than the Friday immediately following the Wednesday week-ending date. SOF, ¶ 13. For example, if the week-ending date is Wednesday, December 16, 2009, Kennedy Restaurants' weekly royalty and rent payment would be due on Friday, December 18, 2009. SOF, ¶ 14.

### B.   The Sublease Agreement

Also on October 24, 1995, Kennedy Restaurants entered into a "Sublease – Restaurant" (hereinafter, "Sublease") with Denny's, Inc., under which Denny's subleased to Kennedy Restaurants the premises on which the Restaurant is located (the "Premises"). SOF, ¶ 15. A true and correct copy of the Sublease Agreement is attached as Exhibit 2 to Plaintiffs' Complaint.

The Sublease initially required Kennedy Restaurants to make weekly rental payments to Denny's in the amount of $1,539. SOF, ¶ 16; Sublease, § 3(a). With property taxes, the total amount due was $1,596.69. SOF, ¶ 16. However, on or about May 31, 2003, the parties executed a First Amendment of Sublease, which lowered the rental payments to $1,553.69 per week. SOF, ¶ 17. The operating, accounting, and billing period for the Sublease ends each Thursday morning at 7:00 a.m. SOF, ¶ 18; Sublease, § 3(c). Kennedy Restaurants is required to submit its rental payment for that week no later than the Friday immediately following the Thursday week-ending date. SOF, ¶ 19. For example, if the week-ending date is Thursday, December 17, 2009, Kennedy Restaurants' weekly rental payment would be due on, and must be postmarked by, Friday, December 18, 2009. SOF, ¶ 20.

### C. Denny's Termination of the Agreements Based on Kennedy Restaurants' Chronic History of Late Payments

Kennedy Restaurants undisputedly defaulted on its obligations under the Franchise Agreement more than four times during a six-month period spanning August 2008 and January 2009. SOF, ¶ 26. As a matter of undisputed fact, Kennedy Restaurants paid its weekly royalty and rent payments late *at least 15 times* during that timeframe.

As Denny's Manager of Franchise and Lease Accounting, William L. Turner, testifies in his Declaration, Kennedy Restaurants paid royalties and rent late on the following dates:

| No. | Week-Ending Date | Payment Due Date | Date Payment Received | Number of Days Late |
|---|---|---|---|---|
| 1. | 8/13/2008 | 8/15/2008 | 10/24/2008 | 70 |
| 2. | 8/20/2008 | 8/22/2008 | 10/24/2008 | 63 |
| 3. | 8/27/2008 | 8/29/2008 | 11/19/2008 | 82 |
| 4. | 9/3/2008 | 9/5/2008 | 12/1/2008 | 87 |

5

| | | | | |
|---|---|---|---|---|
| 5.  | 10/1/2008  | 10/3/2008  | 2/6/2009  | 126 |
| 6.  | 10/8/2008  | 10/10/2008 | 12/15/2008 | 66 |
| 7.  | 10/15/2008 | 10/17/2008 | 12/12/2008 | 56 |
| 8.  | 11/5/2008  | 11/7/2008  | 12/12/2008 | 35 |
| 9.  | 11/12/2008 | 11/14/2008 | 12/18/2008 | 34 |
| 10. | 11/19/2008 | 11/21/2008 | 12/26/2008 | 35 |
| 11. | 11/26/2008 | 11/28/2008 | 12/26/2008 | 28 |
| 12. | 12/31/2008 | 1/2/2009   | 5/5/2009  | 123 |
| 13. | 1/7/2009   | 1/9/2009   | 4/6/2009  | 87 |
| 14. | 1/14/2009  | 1/16/2009  | 4/6/2009  | 80 |
| 15. | 1/21/2009  | 1/23/2009  | 3/30/2009 | 66 |

SOF, ¶ 26. Based on these 15 late payments between August 2008 and January 2009, Plaintiffs terminated both the Franchise Agreement and the Sublease by letter dated March 19, 2009 ("Notice of Termination"). SOF, ¶ 27.[1]

### D. Kennedy Restaurants Has Continued Its Pattern of Late Payments Following the Termination.

As the Court is aware, Kennedy Restaurants has continued to operate the Restaurant since the March 19, 2009 termination notice. During this time, its payment history is no better than before the issuance of the termination notice. SOF, ¶ 28. In fact, it's worse:

- In the 37 weeks following the March 19, 2009 termination, Kennedy Restaurants has paid its royalties and rent late *all 37 times*. The payments have been made anywhere from ten to 119 days late. SOF, ¶ 29.

---

[1] A true and correct copy of the Notice of Termination is attached as Exhibit 3 to Plaintiffs' Complaint.

- Kennedy Restaurants has not paid *any* royalties at all for the past *12 consecutive billing periods*. SOF, ¶ 30.

- Kennedy Restaurants has not submitted *any* weekly sales reports for the four most recent weekly billing periods. SOF, ¶ 31.

- The total amount of rent and royalties that Kennedy Restaurants currently owes is more than $39,000. This figure includes payments that were due in *August*, and the most seriously delinquent of these payments was 117 days past due as of December 16. SOF, ¶ 32.

### III.    ARGUMENT

#### A.    As a Matter of Law, Denny's Termination of the Franchise Agreement and Sublease Was Proper.

The Franchise Agreement contains a provision that allows for termination based on a franchisee's chronic defaults. SOF, ¶ 21. Specifically, Section 18.2(i) provides that DFO may immediately terminate the Franchise Agreement, without prior notice to the franchisee, if during any 12-month period, the franchisee fails on *four or more occasions* to comply with one of more standards or requirements of the Franchise Agreement, including payment obligations. SOF, ¶ 22. Even if the franchisee ultimately cures the default, the "four strikes" provision still allows DFO to terminate. SOF, ¶ 23; Franchise Agreement, § 18.2(i).

The Sublease also contains a "cross-default" provision. SOF, ¶ 24. Section 16 of the Sublease describes certain events that constitute a default of the Sublease. Among other things, a franchisee is deemed to have defaulted under the Sublease if the franchisee "defaults under the terms of a franchise agreement with the Sublessor for the Premises or any other agreement between Sublessor, its subsidiaries, parent company or affiliates . . . ." SOF, ¶ 24; Sublease, § 16. In other words, if the franchisee defaults on

7

the Franchise Agreement with DFO, LLC, it is also deemed to be in default of the Sublease with Denny's, Inc.

In this case, Kennedy Restaurants defaulted on its payment obligations to Denny's at least 15 times between August 2008 and January 2009. Denny's was entitled to terminate based on only four defaults. Thus, Denny's March 19, 2009 termination notice was proper, pursuant to Section 18.2(i) of the Franchise Agreement. Additionally, a default of the Franchise Agreement constitutes a default of the Sublease. *See* Sublease, § 16. In view of Kennedy Restaurants' blatant and repeated defaults under the Franchise Agreement, Denny's properly terminated the Sublease as well.

In addition to these pre-termination defaults, Kennedy Restaurants has continued to default on its payment obligations after the termination. In fact, since March 19 it has paid its royalties and rent late an additional *37 times* and has not made a single royalty or rent payment for the past 12 weeks in a row. It has also breached the Franchise Agreement by failing to report its sales for the past four consecutive weeks.[2] In short, under any objective measure, Kennedy Restaurants has materially breached, and continues to breach, the Franchise Agreement. Therefore, as a matter of law, Denny's termination of that agreement and the Sublease was proper. Indeed, it *must* be permitted to terminate these agreements under these extraordinary circumstances.

### B. Denny's Acceptance of Late Payments Did Not Constitute a Waiver of Its Right to Insist on Timely Payments.

Defendants will likely argue that, because Denny's has accepted late payments in the past, this "course of dealing" obligated Denny's to accept late payments in perpetuity.

---

[2] This failure to report is also a breach of the Franchise Agreement and the Sublease, both of which require weekly reporting of sales data. *See* Franchise Agreement, § 7.3; Sublease, § 4(b).

Therefore, the argument goes, Denny's did not properly terminate the Franchise Agreement on March 19, 2009. Any such argument is simply wrong.

The Franchise Agreement itself directly refutes this contention. Section 21.4 makes it clear that Denny's acceptance of payment in one instance does not constitute a waiver of its right to demand timely payments:

> The receipt and acceptance of by either party of any delinquent payment due hereunder *shall not constitute a waiver of any other default*. Except as provided by the foregoing, no delay or omission in the exercise of any right or remedy by either party upon any default by the other hereunder shall impair such right or remedy or be construed as a waiver of any term, covenant or condition of this Agreement to be performed by the other party.

(Emphasis added). Just as important, Section 21.4 provides that any purported "waiver" must be in writing: "Any waiver of any other default must be in writing and shall not constitute a waiver of any other default concerning the same or any other term, covenant or condition of this Agreement."

Thus, Denny's prior acceptance of late payments does not prohibit it from terminating the Franchise Agreement due to Kennedy Restaurants' chronically late payments. Moreover, Defendants have not offered any writing in which Denny's purported to waive its right to insist on strict compliance with the payment terms of the parties' agreements. Accordingly, Defendants' "course of dealing" argument fails as a matter of law.

### C. Plaintiffs' Acceptance of Post-Termination Payments Does Not Constitute a Waiver of Their Right to Terminate the Franchise Agreement.

Defendants may also argue that even if they failed to comply with the Franchise Agreement, Plaintiffs' acceptance of *post-termination* payments amounts to a waiver of Plaintiffs' termination rights. Again, such an argument would be misplaced.

9

PHX 329,141,050v1

In fact, other courts have considered, and rejected, that exact argument. *See, e.g., Dunkin' Donuts Franchised Rests., LLC v. Cardillo Capital, Inc.*, 551 F.Supp.2d 1333 (M.D. Fla. 2008). The court in *Cardillo*, considering facts that are identical to those in this case, very succinctly disposed of the franchisee's waiver argument:

> Defendants' Answer asserts that Dunkin' Donuts has waived its breach of contract claims because plaintiffs "have continued to accept, and Defendants have continued to pay, franchise and advertising fees pursuant to all agreements as Defendants' business at each franchise permits, including the franchise and advertising fees referred to in the complaint." Under Massachusetts law, the burden of proving waiver is upon the party who makes the assertion. In order to establish waiver, the party must show clear, decisive and unequivocal conduct indicating that the opposing party would not insist that the contractual provision at issue be performed." *Brennan v. Carvel Corp.,* 929, F.2d 801, 810 (lst Cir. 1991) (internal citations omitted). This is an "uncompromising" standard. *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 992 (lst Cir. 1988). The debit by defendants falls far short of the type of conduct necessary to establish waiver by plaintiffs of its rights to timely payments and non-use of the Dunkin' Donuts Marks after termination. Additionally, the parties agreed in the Franchise Agreements (§ 13.0) that such conduct does not constitute a waiver. Thus, as there is no evidence presented which supports a waiver by Dunkin' Donuts, summary judgment is granted in favor of plaintiffs as to Counts I through V.

*Id*. at 1337.

The Court should reach the same conclusion here. By accepting post-termination payments, Plaintiffs are merely mitigating the damages to which they are entitled under federal law due to Defendants' unauthorized use of the Denny's Marks. In addition to injunctive relief, the Lanham Act entitles Denny's to recover Defendants' profits, any damages Plaintiffs have sustained, and their costs of suit as compensation for Defendants' willful infringement. *See* 15 U.S.C. § 1117(a) (providing that once infringement is shown, "the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action"). Thus, whether

10

Kennedy Restaurants was using Denny's Marks as an authorized franchisee or an infringer, it must *pay* to use the marks. And as long as Kennedy Restaurants continues to use the Marks, Denny's is completely justified in accepting post-termination royalty payments.

A similar analysis holds true with regard to Denny's acceptance of post-termination rent payments. Clearly, Kennedy Restaurants is continuing to use and occupy the Premises. As long as Kennedy Restaurants continues to "hold over" after the termination of the Sublease, Denny's is entitled to collect rent. *See* A.R.S. § 33-323 ("Every person in possession of land out of which rent is due is liable for the amount or proportion of rent due from the lands in his possession, although it is only a part of the land originally demised, without depriving the landlord of other legal remedies for recovery of rent."); *see also* A.R.S. § 33-342 ("When a lessee holds over and retains possession after expiration of the term of the lease without express contract with the owner, the holding over shall not operate to renew the lease for the term of the former lease, but thereafter the tenancy is from month to month.").

Allowing Kennedy Restaurants to use the Premises rent-free during the course of this lawsuit would only put Denny's in the difficult position of obtaining a judgment, and then trying to collect a year or more of past-due rent from an entity that could very well be insolvent. That result is both unfair and directly contrary to Arizona statutory law, which allows a landlord, like Denny's, to collect rent in these circumstances.

**D. Denny's Is Entitled to a Permanent Injunction Prohibiting Defendants from Continuing to Use the Denny's® Trademarks.**

If the Court rules in Denny's favor on Count Four (for breach of the Franchise Agreement), Denny's is also entitled to a permanent injunction prohibiting Defendants from continuing to use the Denny's® name and trademarks. A ruling in Denny's favor on

11

Count Four would mean that the March 19, 2009 termination notice was and is legally effective based on the enforcement of the termination clause of the Franchise Agreement. If the termination is proper, then Defendants are infringers because they lost the right to use to use the Denny's® trade name and trademarks as of March 19, yet they continue to use them. *See* 15 U.S.C. § 1114(1) (a person who uses a trademark without the permission of the registrant is liable for trademark infringement).

The Court has the authority to enjoin this conduct, and should do so in connection with its ruling on this Motion. The Franchise Agreement requires Defendants to cease using the Denny's® name and trademarks once their franchise is terminated. *See* Franchise Agreement, § 19.1(a) (stating that the franchisee must cease using "the Denny's Marks, including without limitation, all trademarks, trade names, service marks, logotypes, labels, designs and other identifying symbols and names pertaining thereto" upon termination of the Franchise Agreement). If Defendants continue to use the marks following termination, they may be enjoined from doing so:

> Franchisee recognizes the unique value and secondary meaning attached to the Denny's System, the Denny's Marks, the Confidential Information and the associated standards of operation and trade practices, and Franchisee agrees that any noncompliance with the terms of this Agreement or any unauthorized or improper use will cause irreparable harm to [DFO] and its franchisees. *Franchisee therefore agrees that if it should engage in any such unauthorized or improper use, during or after the term of this Agreement, the Company shall be entitled to both permanent and temporary injunctive relief from any court of competent jurisdiction in addition to any other remedies prescribed by law*.

Franchise Agreement, § 21.12 (emphasis added). Accordingly, if the Court rules as a matter of law that Kennedy Restaurants breached the Franchise Agreement by making late payments and failing to make payments, the Court should enjoin Defendants from continuing to use the Denny's® trade name and trademarks.

12

### E. Denny's Is Entitled to an Order Directing Defendants to Surrender the Leased Premises.

In Count Five of the Complaint, Denny's asks the Court to declare that the Sublease was properly terminated. Both the Franchise Agreement and the Sublease require Defendants to surrender the restaurant premises to Denny's in the event of a termination. *See* Franchise Agreement, § 19.1(b) (franchisee must, upon termination, "promptly and peaceably deliver and surrender . . . possession of the Restaurant building, parking lot, and fixtures"); Sublease, § 16 (upon Defendants' default, Denny's may exercise various remedies, including "re-enter[ing] and tak[ing] possession of the Premises"). The Court should, therefore, issue an order directing Defendants to do so.

### F. Denny's Is Entitled to Summary Judgment on the Counterclaim.

#### 1. Denny's Did Not Breach the Parties' Agreements.

In their Second Amended Answer and Counterclaim [Doc. #72], Defendants allege that Denny's breached the parties' agreements by seeking to terminate them in March 2009. These allegations are based on the erroneous premise that, because Denny's accepted late payments from Kennedy Restaurants, it somehow waived the right to insist on timely payments, and thereby waived the right to terminate the Franchise Agreement and Sublease. As discussed above, Denny's was, and is, entitled to terminate the parties' agreement based on the 15 late payments that Kennedy Restaurants made between August 2008 and January 2009 (not to mention the 37 late payments since then). And, as a matter of law, it did not waive any of its rights under either agreement. Accordingly, the termination was proper, and this aspect of Defendants' counterclaim should be dismissed.

#### 2. Denny's Did Not Overcharge Defendants for Rent.

Defendants also allege that that, "by letter dated July 9, 2003, Denny's agreed to reduce Kennedy Restaurants' weekly rental payments under the Sublease to $1,496.00."

13

PHX 329,141,050v1

Counterclaim, ¶ 9. The Counterclaim goes on to allege that "Denny's failed to implement this change, continuing to charge Kennedy Restaurants the original base rent." *Id*. As a result, Kennedy Restaurants alleges that it has been "overcharged in excess of $18,000.00 in rental expenses." *Id*.

As an initial matter, Defendants' claim is barred by the statute of limitations, which is clear from the face of the pleading. According to the Counterclaim, Denny's allegedly agreed to reduce Kennedy Restaurants' weekly rental payments in July 2003. In Arizona, the limitations period for an action on a written contract is six years. *See* A.R.S. § 12-548.[3] Assuming, *arguendo*, that the first rental payment under the new agreement was due sometime in July 2003, Defendants' claim was time-barred no later than July 2009, six years after Denny's allegedly failed to charge the reduced rent. The Counterclaim was filed in November 2009, *almost four months after the statute of limitations expired*. For that reason alone, Defendants' counterclaim for these alleged rent overcharges should be dismissed.

More to the point, however, Denny's never agreed to reduce the rent to $1,496.00 per week. The sole document on which Defendants' claim rests – a letter from one of Denny's former paralegals – is not the Sublease. It is merely a transmittal letter (one that apparently contains a typographical error as to the amount of the rent), and has no evidentiary value whatsoever. The *actual* agreement that the parties signed, the First Amendment of Sublease ("Amendment"), did, in fact, lower the weekly base rent – from $1,596.69 to $1,553.69, a reduction of $43 per week. SOF, ¶ 33. This $43-per-week reduction is exactly what Defendants had asked for.

---

[3] A.R.S. § 12-548 provides that, "[a]n action for debt where indebtedness is evidenced by or founded upon a contract in writing executed within the state shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward."

14

The parties' original Sublease expired on May 31, 2003, and the original rent (including property taxes) was $1,596.69.  SOF, ¶ 34; *see also* Sublease, §§3(a), 2(a).  During the course of the parties' negotiations for the renewal of the Sublease (which culminated in the signing of the Amendment), Dr. Burton wrote a letter to Denny's, dated June 16, 2003.[4]  SOF, ¶ 36.  In it, he said: "If you will reduce the rent by $43.00 per week (you will still make $100/week), I will sign [the Amendment]." SOF, ¶ 36.  Denny's did just that – it agreed to lower the rent from $1,596.69 to $1,553.69.  SOF, ¶ 37.  Once it did so, Dr. Burton signed the Amendment on behalf of Kennedy Restaurants.  SOF, ¶ 38.  The Amendment provided for the payment of weekly rent in the amount of $1,553.69.  SOF, ¶ 39.  Kennedy Restaurants paid this rental amount, without question or complaint, *every week* for the next *six years*.  SOF, ¶ 40.

Based on these facts, which are indisputable, Denny's is likewise entitled to summary judgment on Defendants' rent-overcharge claim.  Denny's charged Defendants the exact amount of rent they agreed to pay when they signed the Amendment.

### IV.     CONCLUSION

Kennedy Restaurants made at least 15 late payments of royalties and rent between August 2008 and January 2009, subsequently paid late 37 times, and then stopping paying altogether. Kennedy Restaurants has also stopped reporting its sales, as it is contractually obligated to do. Accordingly, Denny's is entitled as a matter of law to terminate the parties' Franchise Agreement and Sublease.  Denny's is also entitled to summary judgment on Defendants' Counterclaim.  Denny's clearly did not breach the parties' agreements by seeking to terminate them, nor did Denny's overcharge Defendants' for

---

[4] The negotiations for the Amendment continued until well after the original Sublease expired, which is why Dr. Burton's letter is dated after May 31, 2003, the effective date of the Amendment.  SOF, ¶ 35.

15

PHX 329,141,050v1

rent, as alleged in the Counterclaim. The Counterclaim should therefore be dismissed in its entirety.

Based on the foregoing, the Court should: (1) grant summary judgment in Denny's favor on Counts Four and Five of its Complaint; (2) grant summary judgment in Denny's favor on the Counterclaim; (3) issue a permanent injunction prohibiting Defendants from using the Denny's® name and trademarks; and (4) issue an order directing Defendants to immediately surrender the leased premises.

RESPECTFULLY SUBMITTED this 5th day of January, 2010.

GREENBERG TRAURIG, LLP

By: <u>Aaron C. Schepler</u>
    Jeffrey H. Wolf
    Aaron C. Schepler
    Kami M. Hoskins
    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

☒ I hereby certify that on January 5, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Timothy J. Thomason
Mariscal, Weeks, McIntyre & Friedlander, P.A.
2901 N. Central Ave., Ste. 200
Phoenix, Arizona  85012-2705
tim.thomason@mwmf.com
Attorneys for Defendants

☐ I hereby certify that on _____, I served the attached document by U.S. Mail on the following, who are not registered participants of the CM/ECF System:

/s/ Marie E. Sanchez

*PHX 329,141,050v1*